UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| LARRY SINCLAIR WILLIAMS, | ) |
| Plaintiff, | ) CIVIL ACTION No. 6:10-CV-168-KSF |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, *et al*., | ) **AND ORDER** |
| Defendants. | ) |

\*\* \*\* \*\* \*\* \*\*

Plaintiff Larry Sinclair Williams, confined in the Gilmer Federal Correctional Institution, in Glenville, West Virginia,[1] filed the instant *pro se* civil rights action asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), § 2680, the Privacy Act, 5 U.S.C. § 552a, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq*.[2]

As Williams has been granted pauper status, *see* Order, R. 9, and is asserting claims against government officials, the Court now screens his Complaint pursuant to 28 U.S.C. §§

---

[1] When Williams filed this action, he was confined in the United States Penitentiary-Allenwood, which is located in White Deer, Pennsylvania.

[2] The defendants are: (1) the United States; (2) John Rowley, Assistant United States Attorney ("AUSA"); (3) John Nassikas, AUSA; (4) "Ms. White," preparer of Williams' Presentence Investigation Report; (5) "Hooper," Agent, Federal Bureau of Investigations ("FBI"); (6) "Welch," FBI Agent; (7) Harley Lappin, Director, Bureau of Prisons ("BOP"); (8) Kim White, BOP Mid-Atlantic Regional Director; (9) Michelle Fuseyamore, BOP Regional Counsel; (10) Eric Wilson, Warden, United States Penitentiary-McCreary ("USP-McCreary"); (11) "McLeod," Associate Warden of Operations, USP-McCreary; (12) "Fernandez," Associate Warden of Programs; (13) "Captain Shultz"; (14) "Lieutenant Huff," Agent, Special Investigative Services ("SIS"); (15) "Lieutenant Burchette," SIS Agent; (16) "Lieutenant Shoemaker," SIS Agent; (17) 4-A Unit Manager; (18) Rebecca Wood, Case Manager; (19) Keith Straub, Counselor; (20) "Ellis," Unit 4-A Secretary; (21) 4-A Second Shift Unit Officer; (22) "CMC" Sheldrake; (23) "Ms. Foster," 6-B Unit Secretary; and (24) Eric Holder, United States Attorney General.

1915A and 1915(e). Both of these sections require a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id.* §§ 1915(e) and 1915A.[3] As explained below, Williams' claims will be dismissed and his pending motions will be denied.

## CLAIMS ASSERTED AND RELIEF REQUESTED

Williams alleges that while confined at USP-McCreary in 2008 and the first nine months of 2009, the named defendants violated his constitutional rights by:

(1) retaliating against him for assisting other USP-McCreary inmates with filing prison grievances;

(2) failing to safeguard sensitive documents identifying him as a confidential government and/or SIS informant and allowing them to be disseminated to USP-McCreary employees and ultimately, to USP-McCreary inmates;[4]

(3) willfully, knowingly, and intentionally allowing him to be attacked by other USP-McCreary inmates and failing to protect him from hostile activity within USP-McCreary;

(4) failing to properly house inmates according to their security classifications;

---

[3] *Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008). Moreover, at the screening phase, federal courts must take as true the allegations in a *pro se* complaint and construe those allegations in the plaintiff's favor. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). A district court must dismiss an action at any time if it determines that it is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2).

[4] It is unclear from Williams' Complaint whether he is claiming that he <u>was not</u> in fact a government witness/SIS informant, and that the named federal officials falsely documented him as such and allowed that false information to be circulated, or whether he <u>was</u> in fact a government witness/SIS and informant, and that the named federal officials allowed that correct information about him to be circulated among employees and prison inmates.

2

(5)	failing to physically and electronically patrol the prison, detect inmate disturbances, and ensure the safety of inmates;

(6)	refusing to mail his prison administrative grievances in violation of the First Amendment and the APA;

(7)	refusing to respond to prison administrative grievances and tort claims; and

(8)	refusing to provide him with documentation in response to his Privacy Act requests about federal employees willfully and intentionally performing their duties.

Williams seeks $100,000.00 in compensatory damages from each defendant; punitive damages; and an Order prohibiting any further retaliatory actions against him.

## FACTUAL ALLEGATIONS

The following is a summary of the allegations in Williams' June 23, 2010, Complaint, [R. 2] and the supplemental documentation he filed on August 2, 2010, [R. 5].

Williams was transferred to USP-McCreary in 2008 and worked at a UNICOR prison job handling patents on governmental inventions, but was then transferred to a job in the Education Department. After being charged with and convicted of possessing contraband, *i.e.*, a $100.00 bill, Williams was sanctioned to a 60-day loss of commissary and phone privileges. Defendant Keith Straub terminated his employment in the Education Department, and another USP-McCreary official, whom Williams identified only as "Mrs. Ellis," threatened to "make his life living hell" if he continued assisting other inmates file prison grievances. [R. 2, p.7]. Williams claims that Ellis improperly characterized his 1976 conviction as "Escape" in his BOP record.

In February 2009, a Memorandum marked "Sensitive," allegedly printed on government stationery, was circulated throughout USP-McCreary. On May 27, 2009, a group of inmates

3

accused Williams of being a government witness and SIS cooperative who informed on other inmates. Williams states that he was "instructed to check into the hole," but he did not identify *who* instructed him to do so. When he refused, he was beaten in front of the Unit 4-A Officer and thrown down metal steps. [*Id.*]. Again, Williams did not identify *who* beat him, but his Complaint suggests that another inmate beat him. Williams alleges that, although he received medical attention, the attack caused him physical pain and emotional distress.

After the attack, Williams was briefly placed in the Segregated Housing Unit ("SHU"). Defendants Shultz, Burchette, and Shoemaker showed Williams a "Governmental Memorandum with 'Sensitive' written on the front," which identified him as a government witness and SIS informant, listed his cell and unit number, and instructed prison staff to seek his assistance whenever necessary. [*Id.*, p. 9]. However, Williams alleges that Shultz, Burchette, and Shoemaker later informed him that inmates had prepared the list "to get" him. *Id*.

Williams was then placed in Unit 6-B and, while confined there, sent a BP-8 informal administrative remedy to Mr. Stallion, the 6-B Counselor, which Stallion in turn forwarded to Unit 4-A for a response. Williams alleges that while confined in Unit 6-B, he also sent a BP-9 formal administrative remedy marked "Sensitive" to the "Regional Officer Director" by handing the remedy request to Defendant Foster, the acting correctional officer of Unit 6-B. Williams claims that by intentionally refusing to deliver his mail, which included his BP-9 formal administrative remedy, Foster violated his rights under the First Amendment of the United States Constitution, the APA, and 28 C.F.R. §§ 540.18-.19, and thereby prevented him from receiving responses to his administrative remedies.

4

Williams was again placed in SHU, *i.e.*, "the hole" until August of 2009, when he was transferred to FMC-Lexington. There he was also placed "in the hole" until he was later transferred to USP-Allenwood.

Williams apparently filed an FTCA administrative claim with the BOP, because he attached as an exhibit an October 29, 2009, letter from Michelle Fuseyamore, BOP Regional Counsel, acknowledging receipt of his administrative tort claim No. **2010**-00473 dated October 13, 2009, alleging personal injury at USP-McCreary and demanding $25,000.00. *See* Letter, R. 2-1, p.1.[5] Fuseyamore advised Williams that the BOP had six months from that date in which to consider and adjudicate his claim. *Id.* On July 1, 2010, the Court instructed Williams to file in the record the BOP's final disposition of tort claim No. **2010**-00473. *See* Order, [R. 3]. Williams responded that he was unable to obtain BOP's final decision "due to the mail by staff not compliance [sic] with 28 C.F.R. §§ 540.18 and .19." *See* Response, R. 4, p. 1.

In his Complaint, Williams alleged that the named USP-McCreary employees and officials failed to keep his cell properly lighted and failed to safeguard, shred, destroy, or prevent "sensitive information" identifying him as a government witness and SIS informant from being circulated. [*Id.*, pp. 2, 5, & 8]. Based upon their alleged supervisory roles, Williams also blames two BOP administrative officials, K. M. White and Harley Lappin, and Attorney General Eric

---

[5] On June 5, 2009, Williams apparently submitted an earlier FTCA administrative claim which the BOP identified as claim number TRT-MXR-**2009**-04437. In that claim, Williams alleged that USP-McCreary staff had disseminated among the inmates sensitive information identifying him as a government informant and cooperating witness. On July 23, 2009, the BOP denied Williams' FTCA Claim No. TRT-MXR-**2009**-04437, stating that its investigation revealed that unknown inmate or inmates had prepared the list of informants and circulated it among the prison population; that no prison employees had been negligent; and that the prison staff had taken appropriate steps to ensure his safety. *See* Fuseyamore 7/23/09 Letter, [R. 5-1, p. 5].

5

Holder, for allowing information about him to be circulated and failing to protect him from attack on May 27, 2009. Further, Williams alleges that after filing an action against Defendant AUSA's Nassikas and Rowley challenging evidence which they used to prosecute him at trial, Nassikas, Rowley, and the FBI retaliated against him by putting him at risk of an attack, and preventing him from "making an income" while confined in BOP custody. [*Id.*, p. 11.].

Finally, Williams alleges that when he sought documentation under the Privacy Act explaining how information identifying him as a government/SIS informant status had been released and/or disseminated, Michelle Fuseyamore refused to provide him with the requested documentation. Williams attached three letters from Fuseyamore. In her first letter dated July 30, 2009, Fuseyamore refused to answer Williams' questions about SIS documents, stating that "Agencies are not required to answer questions disguised as a FOIA [Freedom of Information Act] request, nor create documents or opinions in response to an individual's request for information." *See* Fuseyamore Letter, [R. 5-1, p. 6]. She added that although the BOP had searched for documents Williams had requested, it could not release the documents because the investigation about which he had inquired was still pending. [*Id.*].

In her second letter dated September 17, 2009, Fuseyamore responded to six specific requests for documents which Williams had submitted under the Freedom of Information Act ("FOIA") and Privacy Act. *See* Fuseyamore Letter, [*Id.*, p. 6]. Fuseyamore informed Williams that most of the information he sought did not exist, *id.*, ¶¶ 2, 5, & 6, but as for his request for specific information involving him as a government informant at USP-McCreary, she explained that such information was being withheld pending investigation pursuant to 5 U.S.C. § 552 (b)(7)(A), which exempts from disclosure records or information compiled for law enforcement

purposes. [*Id*., ¶ 1]. In response to Williams' request for the BOP's interim rules and regulations for handling "sensitive" documents, Fuseyamore responded that Institution Supplement, MCR-1237.11a, *Information Security*, was being withheld pursuant to 5 U.S.C. § 552 (b)(7)(e) because it is a controlled document. [*Id*., ¶ 3].

In her third letter dated March 16, 2010, Fuseyamore responded to Williams' request for specific information involving a "fake snitch list" that had circulated around USP-McCreary. *See* Fuseyamore Letter, [*Id*., p. 3]. She again stated that because an investigation was pending, the requested information was being withheld pursuant to 5 U.S.C. § 552 (b)(7)(A), as it was related to possible law enforcement proceedings. [*Id*.].

## DISCUSSION
### 1. Failure to State a Claim Under the FTCA

Williams unequivocally asserts both his "failure to protect" claims and his First Amendment claims under the FTCA rather than under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* establishes that the victims of a constitutional violation by a federal official have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. *Id*., 403 U.S. at 396-97; *Yeager v. Gen. Motors Corp*., 265 F.3d 389, 398 (6th Cir.2001), *cert*. *denied*, 535 U.S. 928 (2002). *See* Complaint, [R. 2, p. 1] (referring to "Federal Tort Claim Act and Privacy Act Violations" in both the heading and the text); *id*., p. 2 (referencing 28 U.S.C. §§ 2675 § 2680(h) and 1346(b)); *id*., p. 8 (specifically invoking the "Federal Tort Claim [sic]" against the defendants). For the reasons discussed below, Williams' FTCA claims against all named defendants will be dismissed.

### A. FTCA claims Against the Individually-Named Defendants

A claim under the FTCA may only be asserted against the United States. *See* 28 U.S.C. § 2674; *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990); *Atorie Air, Inc. v. Fed. Aviation Admin.*, 942 F.2d 954, 957 (5th Cir.1991). Accordingly, to the extent that Williams seeks $100,000.00 in damages under the FTCA from each of the individuals he sued, he cannot recover. The FTCA claims against the twenty-three individually-named defendants fail as a matter of law, and will be dismissed. *See Smith v. United States*, No. 4:10-CV-P47, 2010 WL 3927506, at *3 (W. D. Ky. October 4, 2010); *Leach v. Department of Veterans Affairs*, No. 3:08-CV-469-C, 2009 WL 1852543, at *2 (W.D. Ky. June 29, 2009).

### B. FTCA Claims Against the United States

Because Williams alleges that the named federal officials intentionally violated his federal rights guaranteed under the First, Fifth, and Eighth Amendments of the United States Constitution, the Court lacks subject matter jurisdiction to entertain such claims under the FTCA.

In his Complaint, Williams alleges that the BOP and the other named federal officials intentionally violated his rights under the First Amendment of the United States Constitution by interfering with his outgoing mail and preventing him from administratively exhausting his claims about his confinement. *See* Complaint, [R. 2, pp. 1, 8, 10-11]. To the extent that Williams also alleges that the defendants prevented him from administratively exhausting his claims, he asserts yet another construed constitutional claim, a denial of due process of law in violation of the Fifth Amendment of the United States Constitution.

Williams asserts another construed constitutional claim, one alleging cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

Specifically, Williams alleges that by fraudulently, knowingly, and willfully disseminating information identifying him as a government witness and/or SIS informant, and allowing that information to reach the hands of hostile USP-McCreary inmates, one of whom attacked him on May 27, 2009, the defendants deliberately and intentionally failed to protect him. [*Id.*].

Where an inmate alleges that a prison official identifies him as a "snitch" to other inmates, with intent to provoke an assault or the fear of assault, the claim qualifies as one of deliberate indifference to his safety and is actionable under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Comstock v. McCrary*, 273 F.3d 693, 699 n. 2 (6th Cir. 2001); *Catanzaro v. Michigan Dept. of Corrections, No.* 1:08-CV-11173, 2009 WL 4250027, at *12 (E.D. Mich., November 19, 2009); *David v. Hill*, 401 F. Supp.2d 749, 756-57 (S.D. Tex. 2005) (holding that where prisoner alleged that he had wrongfully been labeled a "snitch," and was forced to fight off other inmates trying to inflict physical damage on him, he had asserted an Eighth Amendment claim).

Williams made the following statements in his Complaint which demonstrate that he is alleging constitutional violations of an intentional nature, <u>not</u> negligence:

(1) ". . . Larry Sinclair Williams . . . submits a Federal Tort Claim . . . against the above listed Defendant(s) in their individual and official [sic] and official capacity **for willfully, knowingly, intentionally, and wrongful conduct** resulting in assault and battery, **deprivation of the First Amendment** and color of state laws of Kentucky." [R. 2, p. 1] (emphasis added).

(2) "For his [Defendant John Rawley] **wrongful conduct in the fraudulent dissemination** on Plaintiff as a government witness. . . ." [*Id.*, p. 2] (emphasis added).

9

(3) ". . . she [Defendant Michelle Fuseyamore] is being sued for **her deliberate attempt to ignore and with-hold [sic] evidence** . . . ." [*Id.*, p. 4] (emphasis added).

(4) "**Ms. Foster. . .deliberately tamper [sic] with the out going [sic] mail** to the federal officer." [*Id.*, p. 5, footnote] (emphasis added).

(5) ". . . he [Williams] submits this Federal Tort Claim [sic] against the parties for their **deliberate intentional and wilfully [sic] conduct to classify him as a government witness, SIS informant** . . . ." [*Id.*, p. 8] (emphasis added).

(6) ". . . **Ms. Foster's deliberate intent** to impede forwarding such mail [sic] **a violation of Plaintiff's First Amendment [sic] with the right to exhaust his grievances**." [*Id.*] (emphasis added).

(7) "And the named defendants are fully and officially in their individual and personal capacity [sic] responsible for the handling of 'Sensitive" government documents. . . ." [*Id.*, pp. 8 and 10; these pages were consecutive but appear scanned out of order].

(8) "Plaintiff now contendst [sic], that **the federal official's [sic] knowingly, intentionaly [sic] and willful,** defamation of his identity. . . such false and defamation of information **justifies an intentional tort against the listed defendants. . .** that the defendants are responsible for **intentional tort**." [*Id.*, p. 10] (emphasis added).

Admittedly, Williams mentioned the word "negligence" twice on page 8 of his Complaint. However, as explained above, he repeatedly and emphatically characterized the defendants' conduct as intentional, willful, and malicious. He expressly alleged violations of his First Amendment rights, and impliedly, violations of his Fifth Amendment right to due process of law and his Eighth Amendment right to be free from cruel and unusual punishment.

"In determining whether a complaint states a claim falling within any of the exceptions [to the FTCA], the substance of the plaintiff's claim, and not the language used in stating it, is controlling." *Jackson v. United States*, 24 F. Supp.2d 823, 831 (W.D. Tenn.1998) (citing *Moffitt v. United States*, 430 F.Supp. 34, 37 (E.D. Tenn.1976)). Thus, a plaintiff may not avoid the retention of sovereign immunity for constitutional torts in the FTCA simply by framing his complaint as one asserting negligence. Based on the substance of Williams' claims, and his express wording, he alleges numerous constitutional torts, <u>not</u> acts of negligence.

The FTCA applies to cases in which "a private individual [would be liable] under like circumstances." 28 U.S.C. § 2674. In consenting to suit in particular circumstances, the FTCA defines the scope of district court jurisdiction to entertain FTCA suits. 28 U.S.C. 1346(b). "'It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212,(1983)). Thus, "[a]ny claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction." *Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004).

The United States has not explicitly waived sovereign immunity for constitutional torts. *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Jackson v. United States*, 114 F.3d 1187, 1997 WL 321123 at *2 (6th Cir. June 11, 1997) (Table) ("Although the United States has consented to suit under the FTCA, that Act is inapplicable to Jackson because it does not reach alleged due process and other federal constitutional torts."); *A African-American U.S. Citizen v. Tennessee*, No. 3:08-CV-196, 2009 WL 676619 at *1 (E. D. Tenn. March 11, 2009) ("[n]either the United States nor the U.S. Postal Service has waived sovereign immunity for constitutional torts.").

Under similar facts, this Court has determined that claims alleging intentional constitutional violations are not cognizable under the FTCA. *See Browning v. Pennerton*, 633 F. Supp.2d 415, 427-29 ( E.D. Ky. June 22, 2009) (holding that where prisoner sought redress under *Bivens* for constitutional violations, he could not recover under the FTCA); *Antonelli v. Walters*, No. 6:07-219-GFVT, 2009 WL 921103, at *28 (E.D. Ky. March 31, 2009) (same); *Muhammad v. United States*, No. 7:07-CV-68-GFVT (E.D. Ky.) (Order, February 27, 2008, R. 80, pp. 13-15) (dismissing FTCA claims where, despite occasionally mentioning the word "negligent" in the Complaint, the plaintiff clearly alleged intentional constitutional violations, not negligence).[6]

As Williams has alleged acts of intentional constitutional wrongdoing, not negligence, and as sovereign immunity has not been waived for constitutional torts, he has failed to state a claim under the FTCA upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Williams' FTCA claims will therefore be dismissed, with prejudice.

### 2. Failure To State a Claim under the Privacy Act and the APA

Williams asserts claims and seeks damages under the Privacy Act, which provides as follows:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant

---

[6] Other courts have held that while some acts of intentional wrongdoing can be brought under the FTCA, claims asserting constitutional tort claims can not. *Washington v. Drug Enforcement Admin*, 183 F.3d 868, 874 (8th Cir. 1999) ("[C]onstitutional tort claims are not cognizable under the FTCA"); *Hessbrook v. Lennon*, 777 F.2d 999, 1002 (5th Cir.1985) ("[B]roadly speaking, the FTCA provides a waiver of the sovereign immunity of the United States for negligence actions, but not for certain intentional torts, which, if they violated a constitutional right, would often be actionable instead by a *Bivens*-type suit"); *Kennedy v. Mendez*, No. 3:03-CV-1366, 2004 WL 2301917, * 5 (M.D. Pa., January 15, 2004) (recommending that the plaintiff's constitutional claims against the United States be dismissed because they are not cognizable under the FTCA).

to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . [enumeration of twelve permitted disclosures].

5 U.S.C. § 552a(b).

The Act, among other things, permits an individual citizen to access federal agency records containing personal information about him or her and to make corrections to those records. *See* 5 U.S.C. § 552a(d). The statute also provides a civil remedy for an agency's failure to comply with the requirements of the Act. 5 U.S.C. § 552a(g).[7]

However, by its own terms, the Privacy Act creates a cause of action only against federal agencies, not individuals. *See* 5 U.S.C. § 552a; *Williams v. Bezy*, 97 F. App'x. 573, (6th Cir. 2004); *Trimble v. United States*, 28 F.3d 1214 (Table), 1994 WL 284092, *1 (6th Cir. June 23, 1994); *Windsor v. The Tennessean*, 719 F.2d 155, 159-60 (6th Cir. 1983); *Sloan v. Trans Union, LLC*, No. 2:10-CV-10356, 2010 WL 1949621 at *3 (E.D. Mich. April 22, 2010).

With the exception of the United States, which is not an agency, the other twenty-three defendants Williams named in this action are individuals employed by the federal government, not federal regulatory agencies, executive departments, or governmental corporations. As the Sixth Circuit has observed, Congress could have exposed individuals to civil liability under Section 552a(g), but chose not to do so. *See Windsor*, 719 F.2d at 160, n. 5. Since the Privacy Act does not apply to individual conduct, and as Williams has not sued a federal agency, his Privacy Act claims against the twenty-four named defendants herein will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

---

[7] Agencies covered by the Privacy Act are exclusively federal regulatory agencies, executive departments and governmental corporations. 5 U.S.C. § 552(e) and (f); *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir.1999).

### 3. Failure to State a Claim under the APA

Williams alleges that Defendant Foster's failure to deliver his legal mail, *i.e.*, his administrative remedies challenging his confinement in segregation, and the other defendants' refusal to respond to his grievances, entitles him to damages under the APA.

The APA's comprehensive provisions allow "any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in a court.'" *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701-06). Specifically, the APA authorizes a reviewing court to:

> (1) compel **agency action** unlawfully withheld or unreasonably delayed;

and

> (2) hold unlawful and set aside **agency action, findings, and conclusions** found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity....

5 U.S.C. § 706(1)-(2)(emphasis added); *see also Darby v. Cisneros*, 509 U.S. 137, 143-47 (1993) (discussing the provisions and structure of the judicial-review sections of the APA).

The APA is, by its nature, very broad in scope; absent some statutory or other exception, the APA's "comprehensive provisions" provide the backup or default remedies for all interactions between individuals and all federal agencies. 5 U.S.C. §§ 702, 704; *Webster*, 486 U.S. at 599. However, as noted in the preceding discussion, Williams does not name any federal agency as a defendant, only the United States and twenty-three individuals. Further, he does not allege that he is suffering legal wrong because of *agency action*, or that he has been adversely

affected or aggrieved by *agency action*, which is required by § 706. Instead, Williams alleges *only* that some of the twenty-three individually named defendants failed to protect him from foreseeable harm, and that other defendants (Ms. Foster, the 6-B Unit Secretary, and the acting correctional officers at USP-McCreary) violated his First Amendment right of access to the courts by interfering with his mail and impaired his Fifth Amendment right to due process of law by ignoring his grievances.

The APA neither allows claims against individuals nor provides a right to a jury trial. *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116, 1123 (9th Cir. 2009). As noted, claims of constitutional wrongdoing by individual federal officers, such as Williams alleges in this action, must be asserted under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens*.[8] Because the APA provides no basis for recovery against any of the

---

[8] In this case, the Court would be hard put to construe viable *Bivens* claims. Aside from a likely statute of limitations bar, three obstacles would likely impair recovery under *Bivens*. First, Williams did not properly exhaust his claims according to BOP regulations. Williams stated on the face of his Complaint that he submitted his allegedly un-mailed BP-9 Request for Administrative Remedy *to the BOP Regional Director*, but he was required to submit his BP-9 request *to the Warden of USP-McCreary*. 28 C.F.R. §542.15(a). If not satisfied with the Warden's response, Williams then had 20 days from the date of the Warden's response in which to appeal *to the BOP Regional Director*. § 542.15(b). Federal prisoners must properly exhaust their claims, *Woodford v. Ngo*, 548 U.S. 81 (2006), and claims that are facially unexhausted can be dismissed *sua sponte*. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007).

Second, even assuming that his BP-9 had been properly addressed and mailed, federal prisoners do not have a Fifth Amendment right to an effective grievance system. *Argue v. Hofmeyer*, 80 F. App'x. 427, 430 (6th Cir. 2003); *Overholt v. Unibase Data Entry, Inc.* 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. June 14, 2000) (Table); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Third, the defendants' alleged failure to act based upon information contained in Williams' alleged grievance(s) is not the type of personal involvement required to state a *Bivens* claim. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

twenty-four named defendants, Williams' APA claims against them will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

4. Denial of Pending Motions [R. 5 and R. 10]

Williams has filed a "Motion for More Definite Statement," [R. 5], seeking to substitute two original "John Doe Defendants" with specific USP-McCreary officials whom he identifies as "Moulton," Unit 4-A Manager, and "Correctional Officer Barber." Williams also clarifies that Defendant "Ellis" was the Unit 4-A Secretary, not a "Captain." [*Id*.]

As the Court has concluded that Williams does not state a claim upon which relief can be granted under the FTCA, the Privacy Act, or the APA, it would be futile to allow Williams either to substitute or add two more individually named defendants to a civil action which will be dismissed. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993); *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962). While Williams may file a new *Bivens* action, he will not be allowed to assert *Bivens* claims in this action. The Court discussed potential bars to Williams' *Bivens* claims in the preceding section of this Order.

Finally, Williams has filed a motion, [R. 10], objecting to the December 16, 2010, Order granting his motion to proceed *in forma pauperis*, assessing an initial partial filing fee of $15.75, and ordering the deduction of partial payments from his federal inmate account. *See* Order, [R. 9]. Williams argues that because of his low prisoner pay grade (Grade 4), assessing him with the $350.00 filing fee causes him substantial hardship. Further, he claims that due to the meritorious nature of his tort claims, he should be excused from paying even partial filing fees.

The Court will deny the motion. By passage of 28 U.S.C. § 1915(e), Congress imposed upon inmates the obligation to pay the $350.00 filing fee in a civil case regardless of whether a

16

prisoner is successful or unsuccessful in the civil action. A district court has no authority to waive the imposition of the filing fee requirement, although prisoners are allowed to pay the filing fee in installment payments, as was ordered in this case.

Further, the fact that this proceeding will be dismissed does not entitle Williams to a refund of any fees collected so far from his inmate account. A motion seeking the return of a filing fee will be denied absent either a fundamental defect in the proceedings or a complete miscarriage of justice inconsistent with the basic demands of fair procedure. *Duncan-El v. United States*, 168 F.3d 489, 1998 WL 791749, **2 (6th Cir. November 6, 1998) (Table); *Bowden v. Latrelle*, No. 07-938, 2008 WL 243954, at *1 (W.D. Mich. January 28, 2008).

The Court has thoroughly analyzed the merits of Williams' various claims, and it has decided those claims adversely to Williams; he has received due process. As there has been neither a fundamental defect in this proceeding nor a complete miscarriage of justice inconsistent with the basic demands of fair procedure, *Duncan-El, supra*, Williams is neither relieved of his obligation to pay further partial filing fees nor entitled to a refund of partial filing fees already collected.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The Clerk of the Court is directed to add to the CM/ECF informational sheet an additional defendant named in the Complaint, [R. 2, p. 3], being "Ms. White," identified as the preparer of Plaintiff Larry Sinclair Williams' Presentence Investigation Report;

(2) Williams' Complaint, [R. 2], asserting claims under the Federal Tort Claims Act, the Privacy Act, and the Administrative Procedure Act, is **DISMISSED WITH PREJUDICE**;

(3) Williams' Motion for More Definite Statement, [R. 5], is **DENIED as MOOT**;

(4) Williams' motion, [R. 10], objecting to the December 16, 2010, Order granting him pauper status and assessing partial filing fees, [R. 9]; is **DENIED**; and

(5) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This March 24, 2011.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge